UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROL'S DAUGHTER HOLDINGS, LLC,

                        Plaintiff,

        v.

CAROL'S EXPRESS LLC, CVS PHARMACY,
INC., TURNS & TRENDS, INC., and
DONYALE JERMAINE BUSH,

                        Defendants.

No. 08-CV-8498 (GBD)(AJP)


## MEMORANDUM OF LAW IN SUPPORT
## OF ORDER TO SHOW CAUSE AS TO WHY A
## PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Rory J. Radding
Jamie A. Levitt
Mitchell M. Wong
Craig B. Whitney
Amy L. Beckman
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone:        (212) 468-8000
Facsimile:        (212) 468-7900

*Attorneys for Plaintiff*
*CAROL'S DAUGHTER HOLDINGS, LLC*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT OF ARGUMENT ......................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

STATEMENT OF LAW ........................................................................................... 5

I.      STANDARD FOR PRELIMINARY INJUNCTION ....................................... 5

II.     INFRINGEMENT UNDER THE LANHAM ACT .......................................... 5

       A.    Strength of Plaintiff's Marks ............................................................ 6

       B.    Similarity Between the Marks ........................................................... 7

       C.    Whether Defendants Adopted Mark in Good or Bad Faith ................... 8

       D.    Likelihood the Plaintiff Will Bridge the Gap in the Marketplace ......... 8

       E.    Proximity of the Products ............................................................... 8

       F.    Quality of the Defendants' Products ................................................ 9

       G.    Sophistication of Buyers and Quality of Defendants' Product ............ 9

       H.    Actual Confusion in the Marketplace ............................................... 10

ARGUMENT ....................................................................................................... 10

I.      Carol's Daughter is Likely to Succeed on the Merits of its Trademark
      Infringement Claim ............................................................................... 10

       A.    Carol's Daughter's Trademarks Are Entitled to Protection Because the
           Carol's Daughter's Trademarks Are Registered and Valid ................. 10

       B.    There is a Strong Likelihood Of Confusion Between Carol's Daughter and
           Carol's Express ............................................................................ 11

            1.    The Carol's Daughter Trademarks Are Strong and Distinctive .............. 11

            2.    The Degree Of Similarity Between Carol's Daughter's Trademarks
                 And Carol's Express's Infringing Products Is Substantial ..................... 13

            3.    Carol's Express's Bad Faith Is Obvious From Its Predatory and
                 Slavish Copying ........................................................................... 17

             4.    Bridging the Gap Supports A Finding of A Likelihood of
                 Confusion .................................................................................... 19

            5.    The Competitive Proximity of the Products Supports A Finding of
                 A Likelihood of Confusion ............................................................. 20

            6.    The Sophistication of the Purchasers Supports A Finding of A
                 Likelihood of Confusion ................................................................ 20

             7.    The Quality Of Carol's Express's Infringing Products Is Inferior .......... 21

ny-837636

8.     Carol's Daughter Has Documented Evidence Of Actual Confusion ....... 22

II.     Carol's Daughter Should Be Granted Immediate Injunctive Relief Under Section 43(a) of the Lanham Act .................................................................................................... 23

III.     Carol's Express' Misappropriation of Carol's Daughter's Labors and Expenditures Constitutes Unfair Competition Under New York Law ........................... 24

CONCLUSION .................................................................................................................... 25

ny-837636

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976)..................................................................................6

*Aedes de Venustas v. Venustas International, LLC*,
    2007 U.S. Dist. LEXIS 66586 (S.D.N.Y. Sept. 12, 2007)............................. passim

*Cartier, Inc. v. Three Sheaves Co., Inc.*,
    465 F. Supp. 123 (S.D.N.Y. 1979) ...............................................................5, 8

*Cartier v. Aaron Faber, Inc.*,
    512 F. Supp. 2d 165 (S.D.N.Y. 2007)...............................................................23

*Centaur Communication, Ltd.*,
    830 F.2d 1217, 1227 (2d Cir. 1987).........................................................8, 9, 22

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*,
    440 F. Supp. 2d 249 (S.D.N.Y. 2006)..................................................................9

*Federal Express Corp. v. Federal Espresso, Inc.*,
    201 F.3d 168 (2d Cir. 2000)................................................................................5

*Forschner Group Inc. v. Arrow Trading Co.*,
    124 F.3d 402 (2d Cir. 1997)..............................................................................25

*Freedom Calls Foundation v. Bukstel*,
    2006 WL 845509 (E.D.N.Y. Mar. 3, 2006).......................................................23

*Gayle Martz v. Geo Global Group*,
    1998 U.S. Dist. LEXIS 6295 (S.D.N.Y. April 30, 1998).......................................10

*GTFM v. Solid Clothing, Inc.*,
    215 F. Supp. 2d 273 (S.D.N.Y. 2002)............................................................ passim

*Lang v. Retirement Living Publ'g Co.*,
    949 F.2d 576 (2d Cir. 1991)................................................................................9

*Lexington Mgmt. Corp. v. Lexington Capital Partners*,
    10 F. Supp. 2d 271 (S.D.N.Y. 1998)..................................................................7

*Metlife, Inc, v. Metro. Nat'l Bank*,
    388 F. Supp. 2d 223 (S.D.N.Y. 2005)..................................................................9

*Mobil Oil Corp. v. Pegasus Petroleum Corp.,*
   818 F.2d 254 (2d Cir. 1987)................................................................8

*Patsy's Italian Restaurant, Inc. v. Banas,*
   2008 WL 4146212 (E.D.N.Y. Sept. 09, 2008) .........................................23

*Ptak Bros. Jewelry, Inc. v. Ptak,*
   2007 WL 1536934 (S.D.N.Y. May 29, 2007) ..........................................14

*Rado Watch Co. v. ABC, Co.,*
   1992 U.S. Dist. LEXIS 8356 (S.D.N.Y. June 8, 1992)..............................19

*Scarves by Vera, Inc. v. Todo Imports Ltd.,*
   544 F.2d 1167 (2d Cir. 1976)...........................................................9, 13

*Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc.,*
   154 F. Supp. 2d 586 (S.D.N.Y. 2001)................................................6, 8, 9

*TCPIP Holding Co., Inc. v. Haar Communications Inc.,*
   244 F.3d 88 (2d Cir. 2001)..............................................................5, 6, 7

*Virgin Enters. v. Nawab,*
   335 F.3d 141 (2d Cir. 2003).......................................................... passim

*W.W.W. Pharm. Co. v. Gillette Co.,*
   984 F.2d 567 (2d Cir. 1993)...........................................................10, 21

*World Carpets, Inc. v. Dick Littrell's New World Carpets,*
   438 F.2d 482 (5th Cir. 1971) ..............................................................10


**STATUTES**

15 U.S.C. § 1125(a) ..........................................................................23, 24

Plaintiff Carol's Daughter Holdings, LLC ("Plaintiff" or "Carol's Daughter") respectfully requests an order to show cause as to why a preliminary injunction should not issue enjoining defendants Carol's Express LLC ("Carol's Express"), CVS Pharmacy, Inc. ("CVS"), and Turns & Trends, Inc. (collectively "Defendants") from their willful infringement of both Carol's Daughter's trademark and trade name, and their unfair competition against Carol's Daughter.

## PRELIMINARY STATEMENT OF ARGUMENT

Defendants should be enjoined from further use of the name Carol's Express and the marketing of their infringing products. Expedited relief is warranted because the harm to Carol's Daughter will increase exponentially if the Defendants' infringing activities are allowed to occur within the holiday shopping period set to begin in three weeks. No previous application for relief on these grounds has been made to this or any other Court.

There is no doubt that the CAROL'S DAUGHTER logo is a federally registered trademark and that the mark is arbitrary. To qualify for a preliminary injunction to protect its distinctive mark, Carol's Daughter must therefore show irreparable harm and either (a) a likelihood of success on the merits or (b) serious questions on the merits coupled with a balance of hardships. The Second Circuit has held that a likelihood of confusion establishes both irreparable harm and a likelihood of success. Here, because Carol's Express deliberately and calculatedly designed its mark, name and packaging to mimic the Carol's Daughter mark, name and packaging, there has already been documented customer confusion, and it is virtually certain that there will be further consumer confusion between the two products.

As set out in more detail below, each of the eight *Polaroid* factors for likelihood of confusion counsels the grant of an immediate injunction against Carol's Express's continued misappropriation of the Carol's Daughter name, goodwill and reputation. First, the CAROL'S DAUGHTER mark is arbitrary in the field of beauty and personal care products. Second, the

marks are not confusingly similar merely by chance; they reflect a calculated effort by Carol's Daughter to make them so. <u>Third</u>, the Carol's Express mark was adopted in bad faith, as evidenced by both a telling slip in its trademark application referencing Carol's *Daughter*, and doctored images on the Carol's Express website showing Carol's Daughter products. <u>Fourth</u>, because the Carol's Express products are imitations of identical product lines for Carol's Daughter, there is no gap to bridge between the two marks. <u>Fifth</u>, the identity of the imitation product line to the original leaves no doubt that the two products are in confusing proximity to one another. <u>Sixth</u>, Carol's Express's deliberate emphasis of the word CAROL'S in a distinctive script, and its adoption of a more muted font for the word EXPRESS intends and ensures that consumers will confuse the Carol's Express logo with the Carol's Daughter marks. <u>Seventh</u>, there is no denying that the confusingly similar Carol's Express products are inferior in ingredients, price and quality; the Carol's Daughter products are genuinely all-natural and consumers are willing to pay a premium for these products on the strength of the Carol's Daughter name. <u>Eighth</u> and finally, there has been undeniable evidence of actual confusion—in the few months that Carol's Express has marketed its products, several Carol's Daughter customers have already written to Carol's Daughter asking about the relationship between the two brands. For the foregoing reasons, this Court should grant the requested preliminary injunction in all respects.

## STATEMENT OF FACTS

Carol's Daughter is the manufacturer, distributor and retailer of high-quality beauty and personal care products. Haram Decl. ¶ 2. Carol's Daughter was founded by Lisa Price, who entered the industry almost 20 years ago when she began selling home-made fragrances blended in her kitchen in Brooklyn from scented oils. Price Decl. ¶ 3.

In 1993, Ms. Price named her product line "Carol's Daughter" in honor of her mother, Carol. Price Decl. ¶ 3. In 1999, Carol's Daughter obtained trademark registration for a CAROL'S DAUGHTER logo written in a script-like font and decorated with a flower. Price Decl. ¶ 4. Over time, as the CAROL'S DAUGHTER logo evolved, Carol's Daughter applied for further registrations for the additional incarnations of the logo. Price Decl. ¶ 5. In 2005, Carol's Daughter applied for registration of the marks currently used today, which was granted in 2006. Price Decl. ¶ 6.

From its modest beginnings, Carol's Daughter has matured into a flourishing nationwide enterprise in beauty and personal care products. Carol's Daughter now enjoys sales of over $15 million, operates seven stores in the United States and also sells its products online in the United States and Canada. Price Decl. ¶ 11-15. Among numerous other media appearances, Carol's Daughter products have been featured on television in *The Oprah Winfrey Show*, *The Today Show*, *The View*, *The Tyra Banks Show*, and the *Home Shopping Network*, and in print in *Ebony*, *Essence*, *Glamour*, *InStyle*, *Upscale* and *Lucky*. Price Decl. ¶ 17.

The success of Carol's Daughter has attracted unwanted and unlawful imitation. Earlier this year, a new company calling itself "Carol's Express" entered the market for beauty and personal care products. Haram Decl. ¶ 18. Carol's Express has intentionally directed its marketing efforts toward the African American community, which is where Carol's Daughter presently concentrates its sales. Haram Decl. ¶ 7. Unlike Carol's Daughter, however, the Carol's Express products are manufactured using artificial colors and compounds known to cause skin irritation in certain populations. Haram Decl. ¶ 8. Carol's Express also sells its products at a lower price.

3

It is clear that Carol's Express's name is a deliberate effort to steal the goodwill that Carol's Daughter had painstakingly earned over 15 years and increasingly over the last four years. Of all the possible names for its company and beauty products, the owners of Carol's Express deliberately chose a name confusingly similar to Carol's Daughter. In fact, in its original trademark application, Carol's Express inadvertently stated that it was claiming a mark for "Carol's <u>Daughter</u>" (emphasis added). Haram Decl. ¶ 2. Moreover, Carol's Express's website previously featured pictures of Carol's Daughter products that had been doctored to bear Carol's Express logos. Haram Decl. ¶ 10. Indeed, Carol's Express even adopted a set of labels that are deceptively similar to those of Carol's Daughter and uses the same bottles and jars used by Carol's Daughter for Carol's Daughter products.

As a retail product, Carol's Daughter derives a substantial proportion of its revenue and reputation from holiday sales. The harm to Carol's Daughter from Carol's Express's imitation products is therefore imminent because the holiday shopping season begins in three weeks. Haram Decl. ¶ 15. Carol's Express has begun mass-marketing its confusingly similar products with the national pharmacy chain CVS. Haram Decl. ¶ 16. Consumer confusion between the high-quality Carol's Daughter products and the inferior Carol's Express products has already occurred and now threatens to misappropriate and destroy the unblemished reputation that Carol's Daughter has built into its name. This problem is particularly acute this year, where customers, in view of economic circumstances, might inadvertently purchase Carol's Express products as a less expensive version of genuine Carol's Daughter products. Haram Decl. ¶ 17.

A preliminary injunction is necessary to protect Carol's Daughter from the irreparable injury to its goodwill, reputation, revenue stream and market position by Carol's Express's unlawful imitation. An injunction is particularly warranted here because Carol's Express's

efforts to confuse consumers have already borne fruit—in the few months that Carol's Express products have been on the market, several confused customers have already inquired into the relationship between Carol's Express and Carol's Daughter. Haram Decl. ¶ 19. The wrongful nature of Carol's Express's actions and the undeniable and irremediable harm to Carol's Daughter deserves swift relief from this Court against Carol's Express.

## STATEMENT OF LAW

### I.  Standard for Preliminary Injunction

In the Second Circuit, a plaintiff seeking a preliminary injunction "'must establish: (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor." *TCPIP Holding Co., Inc. v. Haar Communications Inc.,* 244 F.3d 88, 92 (2d Cir. 2001) (citation omitted). However, where, as here, Carol's Daughter has a protected trademark, "a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable harm and a likelihood of success on the merits." *Virgin Enters. v. Nawab,* 335 F.3d 141, 146 (2d Cir. 2003).

### II.  Infringement Under the Lanham Act

The components of a claim for trademark infringement under the Lanham Act require the plaintiff to show: (1) ownership of a mark that is "entitled to protection"; and (2) that the "defendant[s'] use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enters.,* 335 F.3d at 146. "The hallmark of infringement in violation of this section is likelihood of confusion." *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 174 (2d Cir. 2000).

Ownership of a registered trademark creates a presumption of both its validity and the trademark owner's exclusive right to use the mark in commerce. *Cartier, Inc. v. Three Sheaves Co., Inc.,* 465 F. Supp. 123 (S.D.N.Y. 1979); *see also Virgin Enters.,* 335 F.3d at 146 (finding that once the "plaintiff prevailed as to the first prong of the test – prior use and ownership," the focus of the inquiry thus turns to the second prong of the test – whether defendants' use creates a likelihood of confusion). Here, where Carol's Daughter unquestionably owns a valid trademark, the Court must turn to the second prong of the test for trademark infringement – likelihood of confusion. In the Second Circuit, likelihood of confusion is determined by the eight *Polaroid* factors set forth in *TCPIP Holding,* 244 F.3d at 100. The analysis is not mechanical; rather, the inquiry ultimately focuses on whether, looking at the products in their totality, consumers are likely to be confused. *Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc.,* 154 F. Supp. 2d 586, 602 (S.D.N.Y. 2001). The law concerning the eight factors is described below. As discussed in the Argument section below, each weighs heavily in favor of an injunction to stop Carol's Express's infringement.

## A.     Strength of Plaintiff's Marks

The first factor is the strength of the mark in question. "The strength of a trademark encompasses two different concepts, both of which relate significantly to likelihood of consumer confusion." *Virgin Enters. Ltd.,* 335 F.3d at 147.

"The first and most important [concept within of this factor] is inherent strength, also called 'inherent distinctiveness.'" *Id.* The inherent-strength inquiry first asks whether the mark has the inherent distinctiveness that would entitle it to protection in the absence of secondary meaning. Marks are classified, in ascending order of inherent strength, as "(1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *TCPIP Holding,* 244 F.3d at 93. A

mark is "arbitrary or fanciful" if it does not describe or suggest the nature of the product sold. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-11 (2d Cir. 1976).

Once the mark has been classified along the spectrum of inherent strength, the second step in determining strength is to consider its degree of distinctiveness, an inquiry that concerns both the inherent inventiveness of the mark itself and the degree of third-party usage of the term as a mark, especially in the market in question. *Virgin Enters.*, 335 F.3d at 148. If a mark has been long, prominently and notoriously used in commerce, there is a high likelihood that consumers will recognize it from its prior use. *Id.*

"The second sense of trademark strength, fame, or 'acquired distinctiveness,' also bears on consumer confusion." *Id.* at 148. "The more arbitrary and fanciful the mark in relation to the goods on which it is used, the more the consumer is likely to assume that a similar mark designates the owner of the first as the course of the goods." *TCPIP Holding*, 244 F.3d at 100. Furthermore, "[w]idespread consumer recognition of a mark previously used in commerce increases the likelihood that consumers will assume it identifies the previously familiar user, and therefore increases the likelihood of consumer confusion if the new user is in fact not related to the first." *Virgin Enters.*, 335 F.3d at 148.

### B.    Similarity Between the Marks

The second factor is the similarity between the competing marks. In assessing similarity between two marks, courts look to the overall impression created by the marks and the context in which they are found. Courts will also consider the totality of factors that could cause confusion among prospective buyers. *Aedes de Venustas v. Venustas International, LLC*, 2007 U.S. Dist. LEXIS 66586, *9 (S.D.N.Y. Sept. 12, 2007); *see Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 283-84 (S.D.N.Y. 1998). Even in cases where the marks are not

identical, but are merely similar, "a court must assess the degree of similarity between the marks in determining whether consumers are likely to be confused." *Id.* at *10.

The crux of the issue is whether the similarity is likely to cause confusion among numerous customers who are "ordinarily prudent." *Id.* at *10. "Thus, 'an inquiry into the degree of similarity between two marks does not end with a comparison of the marks themselves.'" *Id.* at *10 (citation omitted); *see Cartier, Inc. v. Three Sheaves Co., Inc.,* 465 F. Supp. 123, 129 (S.D.N.Y. 1979) (The names need not be identical; it is sufficient if they are similar enough to create a likelihood of confusion.). As the Second Circuit made clear, the setting in which a designation is used affects its appearance and colors the impression conveyed by it." *Id.*

## C. Whether Defendants Adopted Mark in Good or Bad Faith

The third factor looks to whether Carol's Express "adopted the marks with the intention of capitalizing on [Carol's Daughter] reputation and goodwill, as well as any consumer confusion as to the source of the products." *Tactica,* 154 F. Supp. 2d at 603. Actual or constructive knowledge of a senior mark may signal bad faith because "'the second comer has a duty to so name and dress his products as to avoid all likelihood of consumers confusing it with the product of the first comer.'" *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 259 (2d Cir. 1987) (citation omitted).

## D. Likelihood the Plaintiff Will Bridge the Gap in the Marketplace

The fourth factor, "bridging the gap," refers to the likelihood that the senior user will enter the junior's market in the future, or that consumers will perceive the senior user as likely to do so. *Virgin Enters.,* 335 F.3d at 150. This fourth factor vindicates "the senior user's interest in being able to enter a related field at some [later] time." *Centaur Communication, Ltd.,* 830 F.2d 1217, 1227 (2d Cir. 1987) (*quoting Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172 (2d Cir. 1976).

8

### E.    Proximity of the Products

The proximity of the products factor "addresses whether, due to the commercial proximity of the competitive products, consumers may be confused as to their source." *Tactica*, 154 F. Supp. 2d at 603 (citation omitted). "[T]he closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source." *Virgin Enters.*, 335 F.3d at 150. Proximity is measured by "the nature of the products themselves and the structure of the relevant market." *Tactica*, 154 F. Supp. 2d at 603. Competitive proximity considers two elements: market proximity and geographic proximity. *Metlife, Inc, v. Metro. Nat'l Bank,* 388 F. Supp. 2d 223, 232 (S.D.N.Y. 2005). Both elements seek to "determine whether the two products have an overlapping client base that creates a potential for confusion." *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.,* 440 F. Supp. 2d 249, 276 (S.D.N.Y. 2006) (citation omitted); *see also Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 582 (2d Cir. 1991) (When products "serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion.").

### F.    Quality of the Defendants' Products

Under the quality factor, "[c]ourts look to whether the infringing product is of lower quality, thereby 'tarnishing [the] plaintiff's reputation if consumers confuse the two.'" *Aedes de Venustas*, 2007 U.S. Dist. LEXIS 66586 at *18 (alteration in original) (citation omitted). If an infringing product is of inferior quality, the senior user is entitled to protect "the good reputation associated with his mark from the possibility of being tarnished by inferior merchandise of the junior user . . . ." *Scarves by Vera,* 544 F.2d at 1172. Alternatively, "[t]he lack of marked difference in quality between goods supports the inference that they emanate from the same source." *Centaur Communications*, 830 F.2d at 1228.

### G.    Sophistication of Buyers and Quality of Defendants' Product

The inquiry into consumer sophistication considers "the general impression of the ordinary consumer, buying under the normal market conditions and giving the attention such purchasers usually give in buying the product at issue." *GTFM, Inc.*, 215 F. Supp. 2d at 298. "'[R]etail consumers ... are not expected to exercise the same degree of care as professional buyers, who are expected to have greater powers of discrimination.'" *Virgin Enters.*, 335 F.3d at 151; *see also W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993) (consumers are generally less careful when making small purchases).

### H.    Actual Confusion in the Marketplace

The Second Circuit has "deemed evidence of actual confusion particularly relevant" to the inquiry of likelihood of confusion. *See Virgin Enters.*, 335 F.3d at 151. "Evidence of [even] one instance of actual confusion satisfies the actual consumer confusion standard." *Gayle Martz v. Geo Global Group*, 1998 U.S. Dist. LEXIS 6295, *7 (S.D.N.Y. April 30, 1998); *see also World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971) ("[T]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.  Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof.").

## ARGUMENT

### I.    Carol's Daughter is Likely to Succeed on the Merits of its Trademark Infringement Claim

Carol's Daughter is likely to succeed on the merits of a trademark infringement claim because: (1) it can establish prior use and ownership of the Carol's Daughter trademarks, which

10

are inherently distinctive in the marketplace; and (2) the consuming public is likely to be confused about the source of the goods identified by Carol's Express's mark.

### A. Carol's Daughter's Trademarks Are Entitled to Protection Because the Carol's Daughter's Trademarks Are Registered and Valid.

Carol's Daughter is the owner of two valid federal trademarks for CAROL'S DAUGHTER and can also prove prior use dating back to 1993. The mark in its current form was filed for registration in May 2005 and was registered on May 9, 2006. Additionally, a trademark application for the standard character mark for CAROL'S DAUGTHER was filed in May 2005 and granted on May 9, 2006.

### B. There is a Strong Likelihood Of Confusion Between Carol's Daughter and Carol's Express.

#### 1. The Carol's Daughter Trademarks Are Strong and Distinctive



Carol's Daughter trademarks undoubtedly score high on the concepts of strength. Carol's Daughter's registered logo is shown above. In relation to the sale of consumer beauty and personal care products, the CAROL'S DAUGHTER marks are inherently distinctive, in that they are fanciful. The words "Carol's Daughter" have no intrinsic relationship whatsoever to selling beauty and personal care products. Indeed, they do not communicate any information about the product either directly or by suggestion. *See Virgin Enters.,* 335 F.3d at 148-49 (finding the mark VIRGIN to be "arbitrary and fanciful" for consumers because "the word 'virgin' has no intrinsic relationship whatsoever to selling consumer [electronic] equipment.") Because there is

no intrinsic reason for a merchant to use the words "Carol's" or "Daughter" in the sale of beauty and personal care products, a consumer seeing the word "Carol's" used in two different stores selling such products will likely assume that the products are related. Therefore, Carol's Daughter's trademarks are entitled to the strongest protection under the law.

Prior use of the mark CAROL'S DAUGTHER dates back to July 1993 when Carol's Daughter began manufacturing and distributing beauty and personal care products to small salons and boutiques in Brooklyn, New York. Price Decl. ¶¶ 2-3. On August 21, 1999, Carol's Daughter opened its first retail store at 1 South Elliott Place in Brooklyn, New York while continuing wholesale distribution to salons and boutiques. Price Decl. ¶ 12. In 2000, Carol's Daughter started a website at www.carolsdaughter.com which allowed customers to buy Carol's Daughter's products through an online shopping cart. Price Decl. ¶ 13. In 2005, Carol's Daughter opened a second store in Harlem, New York. In 2006, five additional Carol's Daughter retail stores opened in New York, New Jersey, Maryland and California. Price Decl. ¶ 14. Between 2006 and 2008, wholesale distribution of Carol's Daughter's products grew to include over 200 locations. Price Decl. ¶ 16. Some of these locations include Sephora, Macy's, and Dillard's where counters or sections of the store are designated exclusively to Carol's Daughters products. *Id.* In 2008, products started to be promoted and sold through the Home Shopping Network, which considers Carol's Daughter an HSN Top Brand. Price Decl. ¶ 17. As a result, Carol's Daughter is now a nationally recognized and successful line of beauty and personal care products.

Carol's Daughter's success has lead to appearances of Carol's Daughter products on top national television shows, including *The Today Show*, *The View*, *The Tyra Banks Show* and *The Oprah Winfrey Show*. Price Decl. ¶ 17. Carol's Daughter's products have appeared and are also

scheduled to be appearing in numerous national magazines, including, *InStyle*, *Essence*, *Glamour*, *Upscale*, and *Lucky*. This year, Carol's Daughter was also recognized as one of the top 50 marketing innovators by *Advertising Age*, the leading global source of news, intelligence and conversation for marketing and media communities. As a result of this prominent marketing and promotion of Carol's Daughter's products in commerce, Carol's Daughter has gained a national recognition.

This prominent recognition is supported by equally incredible numbers. In 2007, the modest business that Lisa Price started almost 20 years ago grossed over $15 million in sales. In addition, last year, Carol's Daughter invested over $1.7 million in advertising and marketing expenditures to protect its reputation, goodwill and market position. As the Second Circuit noted in *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, a "[p]laintiff's sales figures, its advertising expenditures and the many articles written about the plaintiff clearly established that plaintiff's . . . trademark was highly successful and widely recognized" in that market. 544 F.2d at 1173. Similarly, here, Carol's Daughter's "sales figures . . . and the many articles written about [it] clearly establish[]" that the CAROL'S DAUGHTER trademark is "highly successful and widely recognized." Consequently, the first factor for evaluating likelihood of confusion decidedly tilts in favor of Carol's Daughter.

### 2. The Degree Of Similarity Between Carol's Daughter's Trademarks And Carol's Express's Infringing Products Is Substantial

The similarity between the Carol's Daughter and Carol's Express marks—augmented by Carol's Express's deliberate adoption of the Carol's Daughter label design and product containers—undeniably give rise to a strong likelihood of confusion between the marks.



**The names are highly similar.** The Carol's Daughter and Carol's Express marks are highly similar to one another because both names begin with the possessive "Carol's" in a script form and which, as the first word in both names, is the most memorable. Thus, for example, the Southern District has held that the owner of the logo "05" for sports clothing was entitled to relief against an infringer who used the mark "Players 05" for the same class of goods because "the dominant feature of the 'Players 05' mark is the number '05'" where "the word '[P]layers' appears in a significantly smaller font than the number '05.'" *GTFM v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 295-96 (S.D.N.Y. 2002). Here, as in *GTFM*, the "Carol's" in the "Carol's Express" logo is the "dominant feature" because the purportedly distinguishing word "Express" "appears in a significantly smaller font" with a lighter hue. Moreover, the word "Express" also does little to distinguish the Carol's Express mark from the Carol's Daughter marks because "Express" is a nondescript term that could be construed by customers to refer to an "express" or "lower-end" form of the Carol's Daughter products. *Accord Ptak Bros. Jewelry, Inc. v. Ptak*, 2007 WL 1536934, at *7 (S.D.N.Y. May 29, 2007) (granting preliminary injunction in favor of owner of "Ptak Bros. Jewelry, Inc." mark against infringer using "G. Ptak, LLC" in part because "[w]ithout need for much discussion, this factor favors [Ptak Bros. Jewelry], as both [Ptak Bros. Jewelry] and defendants use Ptak in their names" [emphases added]). Carol's Express's use and emphasis of the distinctive word "Carol's" as the first word in its name and logo is likely to create a natural association with Carol's Daughter in the minds of consumers.

ny-837636

Even where the owner of the mark ordinarily stresses a different aspect of a competing mark, this Court has held that a preliminary injunction is warranted where there is any likelihood of confusion between two. Thus, for example, in *Aedes de Venustas v. Venustas International, LLC,* this Court enjoined a fragrance manufacturer called "Venustas International" in favor of fragrance consultant "Aedes de Venustas" despite the mark owner's more regular use of the term "Aedes" where there was "evidence of confusion of insiders and vendors . . . coupled with the similarities between the two marks." 2007 U.S. Dist. LEXIS 66586, at *11 (S.D.N.Y. Sept. 12, 2007). In the case at bar, the marks "Carol's Express" and "Carol's Daughter" are significantly more similar to those in *Aedes* because Carol's Express places significantly less emphasis on the word "Express."

**The logos and labels are highly similar.** The similarity between the marks is heightened by the similarities between the two logos. Both the Carol's Daughter logo and the Carol's Express logos feature the word Carol's in a distinctive script. The word "Express" in the Carol's Express logo is then written in lower-case letters in a less conspicuous, sans-serif font. Both marks also feature a flower blossom above the name.

It is undeniable that the overall visual impression of the marks is nearly indistinguishable when presented in their commercial context and "the impression conveyed by the setting in which the mark is used is often of critical importance." *Aedes de Venustas,* 2007 U.S. Dist. LEXIS 66586 at *10 (citation omitted). Here, Carol's Express appears to have intentionally designed its family of labels to resemble those of Carol's Daughter. Both sets of labels feature a distinct border, a textured face, prominent display of the product name at the top of the label, balanced by prominent display of the logos at the bottom of the label. In the two products sold in bottles (body cleansing gel and shea body butter), between the product name and the logo, both

labels feature several lines of text in a less conspicuous font and describe the product, ingredients, directions of use and warnings against ingestion and ocular exposure. Carol's Express even duplicates the signature Carol's Daughter catch-phrase, "Made with love." The location of the confusingly similar logos at the bottom of the label significantly adds to the similarity between the marks.

The use of lower-case letters in a sans-serif font for the word "Express" in the Carol's Express mark does not distinguish Carol's Express from the Carol's Daughter brand because these features of the Carol's Express mark are highly reminiscent of the "Beauty by Nature" mark that Carol's Daughter began using around 2005:



Like the Carol's Daughter "Beauty by Nature" mark, the Carol's Express mark features the word "Carol's" in a distinctive script. The word "Express" in the Carol's Express mark is written in a sans-serif font in all lower-cased letters. This is exactly how the "Beauty by Nature" line is featured in the prior Carol's Daughter mark. Moreover, the sans-serif lower-case "Express" is positioned below the line bearing the word "Carol's" in script, in imitation of the words "Beauty by Nature" placed below the line bearing the words "Carol's Daughter" in script.

**The products on which the marks appear are highly similar.** In addition to the similarities between the names and the logos, the impression of similarity between the marks is further augmented by Carol's Express's deliberate copying of the entire product line for Carol's

16

Daughter. Carol's Daughter features a line of shea body butters with scents named "Almond Cookie," "Mango Mélange" and "Jamaican Punch." Carol's Express also features a line of shea body butters with scents named "Almond," "Mango" and "Kai." (Carol's Express's "Kai" scent has a fruity bouquet evocative of fruit punch.).

Moreover, Carol's Daughter carried a line of "shea soufflés" which featured, among others, those three scents. The term "shea soufflé" was a name conceived by Carol's Daughter and was never used before Carol's Daughter began marketing it. Yet, Carol's Express now also markets "shea souffle" [sic] in the exact same three scents. Finally, Carol's Daughter's line of body cleansing gels, which feature, among others, those three scents, are also deliberately copied by Carol's Express's body cleansing gels.

**The containers are highly similar.** Finally, the products are marketed in containers of identical size and appearance. It seems strange at best that out of all the types and shapes of bottles Carol's Express could have used, it chose the exact same shape and size bottles as those of Carol's Daughter. The shea body lotion and the body cleansing gels are sold in 8 fluid ounce transparent plastic bottles. Both bottles have the same height and diameter, and both have rounded tops leading to dispensing caps of the same size. Similarly the Carol's Daughter shea soufflé and the Carol's Express "shea souffle" are both sold in 4-ounce transparent plastic cylindrical jars having the same dimensions and screw-on rounded tops.

**In sum, the marks are even more likely to cause confusion when presented in their commercial context.** The two marks, particularly the identical use of the first word, "Carol's" in the possessive, are undeniably similar. These similarities are further augmented by the similarities in their label design; the use of containers of identical appearance and the identity of products in the product line. The presentation of the already highly similar Carol's Express

ny-837636

marks in the context of these additional similarities renders the marks indistinguishable to the casual consumer, and these facts heavily weigh this factor for likelihood of confusion in favor of Carol's Daughter.

**3.     Carol's Express's Bad Faith Is Obvious From Its Predatory and Slavish Copying**

The Court need not speculate on whether Carol's Express was aware of Carol's Daughter—there is direct and incontrovertible evidence that Carol's Express was aware of Carol's Daughter.  In its own submissions to the U.S. Trademark Office, dated April 28, 2008, Carol's Express made a telling slip: "[t]he mark consists of stylized text of <u>Carol's Daughter</u> with symbol/image rose."  See Haram Decl. Exh. 2 (emphasis added).  One day after Carol's Daughter sent a notice to Carol's Express complaining of Carol's Express's infringement, on July 29, 2008, Carol's Express hastily filed an amendment deleting this revealing mistake.  There are few pieces of evidence that can so clearly demonstrate Carol's Express's intention to copy the Carol's Daughter mark.

In addition to the error in its trademark application, Carol's Express's intention to copy Carol's Daughter's products can also be found in its original website.  The website featured what purported to be Carol's Express products running along both the left edge and the upper right corner of the screen.  Closer examination of the products, however, show that the labeling for the products follow the Carol's Daughter design.  The only difference between the items depicted in the photo and Carol's Daughter's genuine products appears to be that the depicted products had Carol's Express's logo superimposed over the Carol's Daughter logo in the label.

Moreover, bad faith is also established where "similarities between the [infringer] and [owner]'s use of the [mark] are so strong that they could only have occurred through deliberate copying."  *GTFM*, 215 F. Supp. 2d at 297.  Thus, in *GTFM*, the court found that the infringer

acted in bad faith because its "Players 05" mark "could only have occurred through deliberate copying" of the prior user's use of an "05" mark. *Id.* Here, the number of coincidental similarities is so large that they could not possibly have been the result of chance.

As mentioned earlier, there is an unlimited number of arbitrary and fanciful names that could have been adopted for beauty and personal care products marketed to the African-American community. Yet, from the vast universe of potential names, the founders of Carol's Express deliberately chose a name that shared identical components. The impossibly small probability that Carol's Express selected its name by chance without any knowledge of Carol's Daughter plainly points to a deliberate effort at copying. This fact alone was sufficient to tip the scales overwhelmingly in favor of the trademark owner in *GTFM*.

Further, as discussed above, Carol's Express adopted labels that were confusingly similar to those of Carol's Daughter. In addition, for each and every product line, Carol's Express also used containers for their product that were visually identical to those of Carol's Daughter. The probability that Carol's Express also happened by chance to select labels and containers identical to Carol's Daughter in addition to all of the factors above, is so implausible that it leads inescapably to a finding of a likelihood of confusion.

In sum, the likelihood of confusion is exacerbated by Carol's Express's continued efforts to confuse the two products in the mind of the consumer.

### 4. Bridging the Gap Supports A Finding of A Likelihood of Confusion

Each Carol's Express product line is a knock-off from a Carol's Daughter product line. Because the two product lines compete in the same market with such close proximity to one another, there is no "gap" between the products to bridge. "Where, as here, the parties are selling substantially identical products . . . there is no gap to bridge." *Rado Watch Co. v. ABC, Co.*, 1992 U.S. Dist. LEXIS 8356, *12 (S.D.N.Y. June 8, 1992). Thus, in *Rado*, this Court

19

granted a preliminary injunction in favor of the Rado Watch Company against sellers of "watches bearing counterfeit RADO trademarks." *Id.* at *1. Here, both Carol's Daughter and Carol's Express sell specialized beauty and personal care products to the African American community. The products are not merely in proximity to one another—they occupy the exact same space in the market. This close competitive proximity makes Carol's Express's use of a mark nearly identical to Carol's Daughter's trademark and trade dress more likely to cause consumer confusion about source and association. Therefore, in the present matter, the bridging-the-gap factor must necessarily weigh in favor of a finding of likelihood of confusion.

### 5. The Competitive Proximity of the Products Supports A Finding of A Likelihood of Confusion

Because Carol's Express and Carol's Daughter products are virtually identical, they are in close competitive proximity which is likely to result in consumer confusion.

First, Carol's Express and Carol's Daughter's are close in market proximity because they compete for the same customers. Both sell and market beauty and personal care products nationally to African American women. Second, Carol's Express and Carol's Daughter products are close in geographic proximity because Carol's Express has deliberately chosen to distribute its products in neighborhoods where Carol's Daughter has established retail stores. For example, Carol's Express products are distributed at a CVS at <u>105</u> West 125th Street in Harlem, New York which is located only a block away from Carol's Daughter's retail store at <u>24</u> West 125th Street.

### 6. The Sophistication of the Purchasers Supports A Finding of A Likelihood of Confusion

The ultimate decision-making purchaser of Carol's Daughter and Carol's Express products are everyday consumers. The sophistication of a consumer in relation to a set of competing marks is measured by "the impression of [an] ordinary consumer, buying under

normal market conditions and giving the attention such purchasers usually give in purchasing the product at issue." *GTFM*, 215 F. Supp. 2d at 298 (citation omitted).

Courts have noted that when there is already evidence of actual confusion in the marketplace, as here (see discussion Part I.B.8, *infra*), there is "a strong likelihood that even the sophisticated consumers in the beauty market will continue to be confused." *Aedes de Venustas*, 2007 U.S. Dist. LEXIS 66586, at *20. In this case, even a sophisticated consumer will likely be confused about the source and association of Carol's Express products. Further, it has been recognized that consumers are generally less careful when making small purchases. *See W.W.W. Pharm. Co.*, 984 F.2d at 575 ("Generally, purchasers of small items . . . are considered casual purchasers prone to impulse buying.").

Specifically, Carol's Express's use of the word "Carol's" implies association with Carol's Daughter's products. And Carol's Express's use of the word "Express" implies that Carol's Express is more convenient and less expensive way of purchasing Carol's Daughter products. Additionally, the placement of Carol's Express products in CVS increases consumer confusion caused by the word "Express" because Carol's Express products would appear to be distributed by Carol's Daughter in a more readily accessible manner. Carol's Express's use of its mark, trade name and placement of its products is likely to cause both direct and associational consumer confusion. This factor therefore favors a finding of a likelihood of confusion.

### 7. The Quality Of Carol's Express's Infringing Products Is Inferior

Carol's Daughter's products are some of the most well-known and well-respected beauty and personal care products in the United States. Carol's Daughter's reputation stems in part from its use of all-natural ingredients in the preparation of its beauty and personal care products. For example, as their labels show, Carol's Daughter products are formulated from more expensive seed oils and fruit oils. In contrast, the ingredient list on Carol's Express's labels

21

shows that Carol's Express employs parabens (artificially synthesized benzene derivatives), artificial colors, mineral oils and petroleum.

Because the artificial components of the Carol's Express products are known to produce skin irritation, grave reputational harm would accrue to the Carol's Daughter brand from any confusion between its all-natural products and Carol's Express's inferior products. Moreover, contradicting their own ingredients labels, Carol's Express's products all falsely purport to be "Paraben Free. Petroleum Free. No Artificial Color." The blatant inaccuracy of these Carol's Express assurances further erodes the credibility of Carol's Daughter in the eyes of consumers who have been confused by the two brands.

### 8. Carol's Daughter Has Documented Evidence Of Actual Confusion

Carol's Express was formed on May 9, 2008. Carol's Daughter first became aware of Carol's Express products in late July 2008. Thus, Carol's Express has been in competition against Carol's Daughter for less than five months. Although in that short period of time, there has been actual confusion, the Second Circuit has recognized that "[t]he absence of evidence of [actual confusion] is not especially significant . . ., particularly given the short time . . . in which the marks were 'competing,'" *Centaur Communications,* 830 F.2d at 1227. However, Carol's Daughter has already received three emails from consumers who were actually confused about the source of the products marketed under the Carol's Express mark. The first two emails were received in July and the third email was received in September. Haram Decl. ¶ 19. These facts are substantially similar to that demonstrated in *Virgin Enters. v. Nawab,* 335 F.3d 141 (2d Cir. 2003). In *Virgin,* "individuals used to ask [an employee at one of the plaintiff's kiosks] if the kiosk was affiliated with plaintiff's . . . stores." *Id.* at 151. As the Second Circuit's *Virgin* decision noted, "evidence of actual confusion [is] 'particularly relevant' to the inquiry." *Id.* at 151 (quoting *Streetwise Maps, Inc. v. Vandam,* 159 F.3d 743, 745 (2d Cir. 1998)). Under the

ny-837636

*Virgin* decision, there is no doubt that the facts in this case support a finding in favor of the plaintiffs on this "particularly relevant" factor of actual confusion.

## II.  Carol's Daughter Should Be Granted Immediate Injunctive Relief Under Section 43(a) of the Lanham Act.

Section 43(a) of the Lanham Act creates "a federal private cause of action for injunctive relief and damages against a person who 'uses in commerce any word, term, name, symbol, or device' or 'any false designation of origin' that is 'likely to cause confusion' as to the origin of a product." *Freedom Calls Foundation v. Bukstel*, 2006 WL 845509 (E.D.N.Y. Mar. 3, 2006) (quoting 15 U.S.C. § 1125(a)). "Section 43(a) protects registered marks, but also protects certain unregistered trademarks from infringement and even offers a degree of protection from unfair competition for 'unregistrable marks,' such as generic words that have acquired significant secondary meaning." *Id.*

Thus, "Section 1125(a) extends similar protections to unregistered trademarks [as those for registered marks]. . . . Section 1114(1)(a) 'is a broad federal unfair competition provision which protects unregistered trademarks similar to the way that [§ 1114(1) ] protects registered marks.'" *See Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 168 (S.D.N.Y. 2007) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).

Although there is ample evidence of bad faith on the part of Carol's Express, bad faith is not an element of a Section 43(a) unfair-competition claim: a plaintiff "'may recover for unfair competition in violation of federal law without a showing of bad faith.'" *Patsy's Italian Restaurant, Inc. v. Banas*, 2008 WL 4146212 (E.D.N.Y. Sept. 9, 2008) (quoting *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir.1997)).

Rather, to prevail under § 1125(a) or § 1114(1), a plaintiff need only establish " (1) that it has a valid mark that is entitled to protection under the Act and (2) that [the defendant's] actions

are likely to cause confusion as to the origin of the mark." *Id.* As explained in Section A of the Argument above, the Carol's Daughter name and CAROL'S DAUGHTER logos are valid marks entitled to protection. Moreover, as indicated in Section I.B.8 of the Argument above, the Carol's Express marks have already and are certain to continue to cause confusion.

Even if consumers do not believe that Carol's Express is identical to Carol's Daughter, they may still think (as at least two customers already have) that Carol's Express is affiliated with Carol's Daughter. In other words, Carol's Express is attempting to profit from the confusion of consumers who, mistaking Carol's Express products as low-cost alternatives to Carol's Daughter products, might purchase Carol's Express products because of the goodwill developed by Carol's Daughter.

Because Carol's Daughter is likely to prevail on its Section 43(a) unfair competition claim, these facts provide an independent ground on which this Court should issue its order to show cause and to grant a preliminary injunction against Carol's Express.

## III.     Carol's Express's Misappropriation of Carol's Daughter's Labors and Expenditures Constitutes Unfair Competition Under New York Law

Under New York common law, claims for trademark infringement and unfair competition share many common elements with the Lanham Act claims of false designation or origin and trademark infringement, including proof of a likelihood of confusion for equitable relief. *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 301 (S.D.N.Y. 2002). "'[A]n action for [trademark] infringement as well as an action for unfair competition both require a showing that the public is likely to confuse [Carol's Express'] product[s] . . . with that of [Carol's Daughter].'" *Id.* (citation omitted). Secondary meaning is not required to establish unfair competition under New York common law. *See Forschner Group Inc. v. Arrow Trading Co.*, 124 F.3d 402, 408 (2d Cir. 1997) ("a showing of distinctiveness is not required to prove unfair competition under

New York State common law"). The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin or the goods. *GTFM*, 215 F. Supp. 2d at 301.

For the reasons stated above with respect to Carol's Daughter's Lanham Act claim, and because Carol's Express has acted in bad faith, Carol's Daughter should also prevail on its common law claims for trademark infringement and unfair competition.

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be granted in all respects.

Respectfully submitted,

Rory J. Radding
Jamie A. Levitt
Mitchell M. Wong
Craig B. Whitney
Amy L. Beckman
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone:      (212) 468-8000
Facsimile:      (212) 468-7900

*Attorneys for Plaintiff*
*CAROL'S DAUGHTER HOLDINGS, LLC*

ny-837636